FERGUSON *v.* FERGUSON.

CANCELLATION OF INSTRUMENTS—CONTRACT FOR CARE AND BURIAL OF AGED PARENT.

> In suit by aged father to set aside deed given by him to son and latter's wife of a 40-acre farm subject to $240 mortgage in return for home during remainder of his life and a decent burial, evidence *held*, to justify decree for plaintiff of cancellation of deed and adjustment of property rights.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted January 10, 1939. (Docket No. 79, Calendar No. 40,190.)   Decided March 9, 1939.

Bill by William S. Ferguson against Charles Ferguson and wife to set aside a deed and other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Orr & Orr,* for plaintiff.

*Theron W. Atwood,* for defendants.

NORTH, J. Plaintiff filed a bill in equity for the cancellation of a deed given by him to the defendants. Relief was sought on the ground that defendants had breached the contract which constituted the consideration for the deed. From a decree granting the relief prayed the defendants have appealed.

This case is typical of most cases of its class in that it arises out of a transaction that never should have been consummated. Prior to May 15, 1934, plaintiff was the owner of a 40-acre farm in Kingston township, Tuscola county. There was a comfortable dwelling on the place and other reasonably suitable farm buildings. The value of this property was approximately $2,000, and it was subject to a mortgage of $240. In 1934 plaintiff was about 75 years of age. His wife had been dead for several years. While plaintiff had children, none of them were living with him. His son, Charles Ferguson, and the son's wife lived in Flat Rock. A number of years before they had lived on the farm with plaintiff and his wife. Plaintiff wanted them to come to the farm to live and make a home there for him during the remainder of his life. As a result of his talking to defendants concerning this, they moved onto the farm in the spring

of 1934. Shortly thereafter plaintiff gave defendants a warranty deed of the farm, subject to the $240 mortgage; and defendants simultaneously gave plaintiff a life lease. The consideration recited in the life lease was an assignment to defendants by plaintiff of all of his personal property, consisting "of all livestock, tools and household effects."

Immediately after delivery of these papers plaintiff became dissatisfied, complaining that now he had nothing. The undisputed testimony is that Charles then told his father if he so desired they would have the whole transaction set aside, and Charles prepared to have this done; but thereupon plaintiff changed his mind, cried, and wanted defendants to remain with him. For something like a year the parties got along without trouble; then matters of a petty nature began to lead to unpleasantness. Each claims the other was primarily at fault. Plaintiff testified that Charles addressed him on one occasion in particular in decidedly violent and profane language, but this was denied by Charles. Plaintiff complains that Charles and the other members of the household would not talk to him; that defendants did not get for him some simple remedy that he wanted to apply to his knees on account of lameness; that they would not provide him with $5 with which to purchase a truss that he needed and he was compelled to earn the money for this purpose by husking corn; that his bed and bedroom were repainted contrary to his wishes. At one time plaintiff consulted the supervisor of the township, telling him defendants were so mean to him that he could not continue living with them. The supervisor attempted to bring about better relations between these parties, and testified that after he talked to the defendants he thought "conditions improved." But again,

in the spring of 1937, plaintiff complained to the supervisor, and as a result, after having talked with defendants, the supervisor took plaintiff at his request to the county farm and he remained there until this case was heard in the circuit court the following September; and, so far as we are advised, he is still there. On one of his visits the supervisor told plaintiff in substance that since he held a life lease he could make defendants move off the place. Relying on this advice plaintiff told Charles he "better move out;" and plaintiff testified that Charles, using profane language, said, "there will be blood all over this floor before I will move out of here." This was denied by Charles.

There is some uncertainty in the record as to whether at one time Charles indicated he would pay for plaintiff's keep at the county farm at $4 per week. It is undisputed that defendants have not contributed anything to plaintiff's maintenance since he went to the county farm. They give as an explanation that they were without sufficient means to do so. In this connection it may be noted that though defendants kept and operated an automobile, they did not go to see plaintiff or communicate with him after he left his home; at least this is the fair inference from the record. Charles testified he took legal advice and his counsel said, "Let him be over there a while, maybe it will learn him something;" and in his testimony Charles further explained: "The reason I didn't go, I knowed his disposition. If I asked him to come back it would be the same thing." On one occasion after becoming an inmate of the county farm plaintiff returned to his home; he said he could see in the house and hear the folks talking, that he sat down on the doorstep and was not asked to come in. Later, on his return to the county farm and after

he had telephoned to his former home for his under-clothes, they were handed out to him by a grand-daughter as he passed the place.

Defendants claim plaintiff brought on their trouble by reason of his bad disposition, by persisting in doing annoying things about the household, making trouble about the use of the radio, insisting upon digging potatoes before they were ripe, and that he became dissatisfied with the home defendants pro-vided for him without any just cause and left of his own accord.

Too many of the details have already been cov-ered. It quite conclusively appears that the plan and contract these parties entered into cannot be carried out. While not recited in either the deed or life lease, clearly the undertaking was that defend-ants would provide plaintiff with a suitable home, give him proper care and maintenance, and a decent burial at death. They assert they have provided a suitable home and treated him kindly, and are willing to continue to fulfill their part of the undertaking. Such assertions do not check favorably with the easy manner in which defendants have acquiesced in per-mitting the father to remain a public charge. In-stead it lends credence to plaintiff's story as to de-fendants' generally unsympathetic, if not cruel, atti-tude towards him. Certain it is that the contract cannot be carried out; and we think defendants have not made a *bona fide* effort to do so. Instead they have been too intolerant of the eccentricities of old age, a phase of the undertaking which they were bound to have anticipated. The circuit judge was right in decreeing cancellation of plaintiff's deed to defendants.

We have reviewed the record having to do with adjusting incidental property rights of the parties.

Defendants have made some permanent improvement, such as installing electric lights. They have paid taxes, insurance and interest, but have not paid the $240 mortgage. The actual farm work has been negligible; but defendants sold the personal property delivered to them by plaintiff and they have had the use and occupation of the premises since the spring of 1934. They have contributed nothing to plaintiff since he went to the county farm in the spring of 1937. Accounts of this character cannot be balanced to a nicety; and we are of the opinion that these incidental rights of the respective parties were carefully considered and rightly adjusted by the decree of the circuit judge.

If defendants are still in possession of the property, they will be given 15 days after the filing of this opinion within which to vacate; otherwise than this the decree entered in the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.