### EVANS *v.* JOHNSON.

1. DEEDS—CONSIDERATION—EVIDENCE—BOARD AND CARE FOR LIFE—
   GIFTS.

   In suit to set aside a deed of home, given by 75-year-old grantor
   to defendants, on the ground of failure to perform alleged oral
   contract to care for and provide grantor a home during his
   lifetime, evidence *held,* to show existence of understanding
   that defendants were to move into grantor's home, prepare his
   meals for him, and give him such other incidental care as the
   circumstances required and not a gift, as claimed by defendants.

2. SAME—CONSIDERATION.

   A bare conveyance of a 75-year-old grantor's home, his principal,
   if not sole, asset, to parties who were not related to him
   would be unconscionable and closely scrutinized by the court.

3. CANCELLATION OF INSTRUMENTS—FAILURE OF CONSIDERATION—
   EXCUSE.

   Record in suit to set aside deed by 75-year-old grantor of his home
   to parties who are found to have agreed to move in and provide
   meals and other incidental care for the remainder of his life
   *held,* to justify setting deed aside on ground of failure of
   consideration without reasonable excuse therefor.

4. EQUITY—MONEY DECREE—EVIDENCE.

   In suit to obtain equitable relief against defendants, proofs
   *held,* insufficient to make out a case for a money decree for
   sums alleged to have been borrowed by defendants.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted October 11, 1940. (Docket No. 62, Calendar No. 41,310.)   Decided December 10, 1940.

Bill by Thomas Evans against George Johnson
and his wife to set aside a conveyance of real property. Upon death of plaintiff Lula G. Smith was substituted as party plaintiff. Bill dismissed. Plaintiff
appeals. Reversed, and decree for appellant.

*Alexis J. Rogoski* and *Noel P. Fox,* for appellant.

*Stephen Clink,* for appellees.

BOYLES, J. Bill filed by Thomas Evans, plaintiff, to set aside a deed to defendants, husband and wife, on the ground that defendants had failed to perform an oral agreement to care for plaintiff and provide him a home during his lifetime. Defendants denied making the agreement. On the same day that the bill of complaint was filed, Thomas Evans executed and delivered a deed of the property in question to one Lula G. Smith, a relative by marriage. Shortly afterward, Thomas Evans died and Lula G. Smith was substituted as plaintiff. The trial court, after hearing, dismissed the bill of complaint. Lula G. Smith, as plaintiff, appeals and the controversy now exists between the grantees in these adverse deeds.

On April 27, 1929, Thomas Evans, being then about 75 years old, deeded his home in Muskegon county to the defendants, George and Elizabeth Johnson, reserving a life estate. On behalf of the plaintiff, it is claimed that the actual consideration for the conveyance was an oral agreement upon the part of the defendants to care for Mr. Evans and provide him a home during his lifetime. The defendants deny making such an agreement, although admitting at least part performance until excused from doing so by the claimed misconduct of Evans.

The two questions before us are (1) whether such an oral agreement was made; and (2) if so, did the defendants without sufficient reason fail to perform.

The home in question was the only property of the plaintiff, with the possible exception of a disputed bank account variously testified to as around $200 or $400. The Johnsons were not related to Evans, and shortly after the deed was given moved into

the house in question. Defendant George Johnson claims that Evans gave them the deed because he wanted them to move in with him, claims there was no agreement to feed and take care of Evans, that Evans gave them the property without any consideration "out of the goodness of his heart." He also testified they had never told anybody they agreed to take care of Evans, that "we told them that we were taking care of him, but we didn't tell them that we agreed to take care of him. * * * I never told anybody and I never heard my wife tell anybody." Several disinterested witnesses testified that on various occasions the defendant Elizabeth Johnson had told them that they, the Johnsons, were to have the home for taking care of Mr. Evans. An associate of the police department of Muskegon, who was called several times to investigate conditions in the home, testified that Mrs. Johnson told her they were to have the home for Mr. Evans' care, that they were to take care of Mr. Evans during his lifetime for the home. The public health officer of Muskegon, likewise called to investigate the conditions, testified:

"I believe I spoke to Mrs. Johnson and told her that Mr. Evans was dissatisfied and that he was not getting enough to eat, and she said they were taking care of him.

"*Q.* Mr. Cayo, when you talked with me this morning did you tell me you had a conversation with Mr. and Mrs. Johnson about the Johnsons agreeing to take care of Evans?

"*A.* Well, they did, so the old gentleman told me. That they agreed to take care of him but he wasn't being taken care of, so he told me that, and I told the Johnsons that and they told me they were taking care of him."

The director of the old age assistance bureau testified:

"I inquired from Mrs. Johnson whether or not there had been such an agreement and she explained that there had been a verbal agreement but they had been unable to fulfill their part of the agreement because Mr. Evans was not to be trusted around the children. * * *

"In answer to my questions regarding the verbal agreement for support and maintenance, Mrs. Johnson explained that they had agreed that Mr. Evans was to live with them as a member of the Johnson family, but that his disposition became such during his last years that they were unable to carry out the agreement and found it necessary to send him up-. stairs to keep him away from the children."

The plaintiff Lula G. Smith testified that before the Johnsons moved in with Mr. Evans, Mrs. Johnson wrote her a letter asking her if it would mar their friendship if they moved in with Mr. Evans, and that:

"She said that Mr. Johnson decided to take the old man Evans and keep him for the home."

She later testified that in 1935 Mrs. Johnson "brought over a deed to our place and said that they didn't believe they would keep him any longer."

An investigator for the probate court testified:

"I had to investigate the home surroundings for the probate court. I asked Mrs. Johnson who the old man looking out the window upstairs was and she said a Mr. Evans, and I asked what relationship Mr. Evans bore to the family. She said they were taking care of him in return for the time being—for the use of the property and when he died or passed on, it was to go to them."

Defendant Elizabeth Johnson testified that when Mr. Evans handed the deed to them nothing at all was said as to what they were to do or why he gave

them the deed; that he asked them to come and live with him. She further testified that when another witness said to her, "I understand that your arrangement with Mr. Evans is to take care of him for the rest of his life and you are to get the property," she didn't answer.

A review of the entire testimony is convincing that there was some agreement on the part of the Johnsons to do something for Evans in return for the deed of his home. For some time before he gave the Johnsons the deed of his home, Evans had been taking his meals with them. He was living alone in his home, and they were all in rather straitened financial circumstances. The record sustains the inference that it was agreed the Johnsons would move into Mr. Evans' home and there provide him his meals and incidental care. This arrangement would save the Johnsons paying rent, and accomplish something for Evans. Certainly, Evans, then an old man, would not be likely to deed away his home without an understanding that he was to receive some benefit in return. We are not impressed with the testimony of George Johnson that Evans gave them the deed entirely "out of the goodness of his heart." There was an understanding between Evans and defendants that they were to move into his home, prepare his meals for him, and give him such other incidental care as the circumstances required. This view is fully justified by the testimony of the witnesses in the case. A bare conveyance without any understanding as to prospective benefits to the grantor would be unconscionable and closely scrutinized by this court. *Nolan* v. *Nolan,* 78 Mich. 17.

The above viewpoint is entirely consistent with the subsequent conduct of these parties. The Johnsons moved in and Evans had his meals with them for something like five or six years. Evans had

some small means, such as a small old age assistance and perhaps some small bank account. These means seem to have been used up. In 1935, there occurred an incident which the Johnsons used as a basis for refusing to further carry out their understanding. Mr. Evans accused George Johnson, in the presence of his children, with improper conduct toward Johnson's daughter. This was an isolated occurrence, without any subsequent repetition. It does not excuse the continuous refusal of the Johnsons to provide meals and care for Mr. Evans from then on. *Ferguson* v. *Ferguson,* 287 Mich. 714. However, the testimony shows that they furnished Evans his meals thereafter only occasionally when he was sick. He provided his own food and did his own cooking on a small oil stove in his upstairs bedroom.

It is apparent that the Johnsons breached their agreement with Evans as early as 1935. In 1937, conditions in the home became such that public officers began to investigate them. Various witnesses testified to unspeakably filthy conditions of Evans' bed and his bedroom, the sole upstairs room he was occupying. The bed clothes were black with dirt, sanitary arrangements were exceedingly foul, windows were out, the roof leaked, and water accumulated on the floor. Any further details of the testimony as to conditions would be nauseating and of no benefit. Lula G. Smith began to care for Evans, clean up his room and furnish his meals in February, 1938, and continued to do so until his death, October 17th. In August, the Johnsons moved out of the home and the Smiths moved in.

The record fairly establishes the existence of the agreement between Evans and the Johnsons whereby they were to move into his home, provide him with meals and incidental care as a consideration for the conveyance. The record is conclusive that the John-

sons failed to perform their part of the agreement without any reasonable excuse for the failure.

There is some dispute as to whether Evans had a bank account and as to whether the Johnsons obtained it. The Johnsons admit borrowing money from him but claim to have repaid it. While plaintiff asks for a money decree against defendants for borrowed money and other property, the proofs are meager in that regard and the trial court correctly found that plaintiff had not made out a case for a money decree.

Reversed for entry of a decree in this court setting aside the deed to defendants in accordance with the bill of complaint, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.