RANDALL *v.* RANDALL.

1. DEEDS—MENTAL COMPETENCY—EVIDENCE.

In aged grantor's suit against son and daughter-in-law to set aside deed of farm given in consideration of care of plaintiff for life, evidence did not justify setting deed aside on ground of mental incompetency of grantor to execute a deed at time of execution.

2. SAME—UNDUE INFLUENCE—DURESS—FRAUD.

In suit by aged and partially paralyzed father to set aside deed of farm given son and daughter-in-law in consideration of care for remainder of his life, record did not justify setting aside deed because undue influence, duress or fraud had been exercised upon plaintiff by defendants or because son stood in a fiduciary relation to plaintiff.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted April 16, 1942. (Docket No. 72, Calendar No. 41,792). Decided June 10, 1942.

Bill by Ernest Randall against Howard E. Randall and wife to cancel a deed and for an accounting. Decree for plaintiff. Defendants appeal. Reversed and decree entered dismissing bill.

*Timothy C. Quinn,* for plaintiff.

*Bates Wills,* for defendants.

SHARPE, J. This is an appeal from a decree cancelling a deed executed by Ernest Randall on May 28, 1938, by which he conveyed a farm to defendants Howard E. Randall and Editha O. Randall, his wife.

Ernest Randall is the father of Howard E. Randall. In the early part of May, 1938, Ernest Randall was living in Grand Bay, Alabama. Previously, he

had been in an automobile accident and was severely injured. On or about May 15, 1938, he had a letter written to his grandson Howard E. Randall, Jr., of Caro, Michigan, in which it was said in substance: if you will come and get me, and look after me, I will deed you my farm. At this time, Ernest Randall was 76 years of age and was partially paralyzed. Upon receipt of plaintiff's letter, Howard E. Randall, Jr., his sister Ruth, and his father, Howard E. Randall, left by car for Alabama. Within a few days, they returned to Michigan with plaintiff and he was taken to defendants' home.

On May 23d, after returning to Michigan, the grandson refused to accept the farm as proposed in the letter. The next morning, defendant Howard E. Randall discussed the disposition of the farm with his father, the result of which was that defendant guaranteed to take care of his father the rest of his life in return for a present deed of the farm. Plaintiff accepted the offer and the next day, May 25th, defendant went to the office of Guy G. Hill, an attorney in Caro, Michigan, to have the deed prepared. The deed was prepared that day and executed May 28, 1938.

About five months after defendants received the property, they mortgaged it for the sum of $2,500 and of this sum approximately $1,025 went for repairs and improvements on the farm, about $430 for modernizing defendants' home and about $225 for back taxes on the farm.

On or about January 20, 1940, plaintiff left defendants' home. After leaving, plaintiff received some checks from defendant which he returned. Plaintiff brought suit for cancellation of the deed, and alleged in his bill of complaint:

"That plaintiff has no recollection whatsoever of signing this deed; that he never consulted anyone in

regard to such a transfer; that he never requested that such a transfer be made; that he never employed anyone to draft this deed; that he never paid anyone for drafting it; and that at the time of signing it, he was mentally incompetent to make a valid transfer of this property. * * *

"That this conveyance was obtained from plaintiff by the fraud, duress and undue influence of these defendants.

"That plaintiff received no consideration whatsoever from the defendants or from any other person in their behalf for this transfer. That no life estate was reserved to the plaintiff and that there was no agreement on the part of defendants to care for, support and maintain plaintiff during his lifetime. That plaintiff has lived with defendants since the date of said deed, but only because he was unable to provide a residence elsewhere."

The cause came on for trial and the trial court found as a fact:

"Plaintiff testifies he has no memory of executing the deed, that if he did execute it he was not conscious of what he was doing at the time.

"The court cannot accept this claim. The scrivener was Guy G. Hill, an attorney of good standing in this court. The court will not review the testimony but, under the testimony of Mr. Hill and the others who were present at the execution of the deed or saw him at that approximate time, finds Ernest Randall did execute the deed at the time alleged and knew at that time he was deeding the land to his son and his daughter-in-law, and did so in expectation of life support and care."

The trial court entered a decree cancelling the deed and providing that defendants pay to plaintiff the sum of $635.27 for plaintiff's share of the crops for the years 1938, 1939, and 1940, and that part of the $2,500 mortgage not used for improving the

farm, after deducting $1,433 as charges for plaintiff's care, support and maintenance.

In giving his reasons for cancellation of the deed, the trial court stated as follows:

"The serious illness of plaintiff, his fear he would not survive that illness, the speed with which the execution of the deed was brought about, the change in grantees and caretakers, the gross inadequacy of the payments offered by Howard Randall in comparison with his income from plaintiff's farm, the indefiniteness as to what plaintiff was to receive in return for stripping himself of his property, the fact plaintiff was in illness stripping himself for the benefit of a son he did not like or trust, the fact a man of notable independence was making himself a helpless dependent, these are all circumstances attending this transaction that are shocking to the court and justifying relief in equity.

"At the age of nearly eighty plaintiff is without property and without a home or suitable support."

We are in accord with the finding of the trial court that "Ernest Randall did execute the deed at the time alleged and knew at that time he was deeding the land to his son and his daughter-in-law, and did so in expectation of life support and care."

Guy G. Hill, the attorney who drew the deed, testified as follows:

"*Q.* Where did you leave the deed?
"*A.* I left the deed with Mr. Randall.
"*Q.* With Mr. Ernest Randall?
"*A.* I did.
"*Q.* Now, from your observation and your conversation there, did Mr. Ernest Randall understand, in your opinion, the meaning of the instrument that he was executing?
"*A.* I surely believe he did.

"*Q.* Do you think there is any question of it whatsoever?

"*A.* No; I took explicit pains to discuss it with him.

"*Q.* Was there any question in your mind at that time as to his mental competency?

"*A.* None whatever."

It is to be noted that five other witnesses gave evidence of Ernest Randall's mental capacity at or about the time of the execution of the deed. The testimony of all of these witnesses supports the claim that Ernest Randall had mental capacity to execute a deed or transact similar business.

It is next urged that the conveyance was obtained by fraud, duress and undue influence. In support of this position, plaintiff relies on the fact that the son stood in a fiduciary relation to his father. The facts in this case show that when plaintiff conceived the idea of disposing of his farm, he was in the State of Alabama, approximately a thousand miles away from any of his relatives; that shortly after making an offer to his grandson, he was able to travel by automobile to Michigan where he entered into the agreement with his son; that at the time the deed was executed he declined a life lease of the property.

Defendant Editha Randall, towards whom plaintiff had no ill feelings, testified as follows:

"*A.* Well, I went in and asked grandpa, I told him, 'I wish grandpa you would take a life lease back on your place. You are going to get up and get around and want to run it yourself, and it will be better for you, and I wish you would do this.' He said, 'Editha, I don't want any life lease; I know I will never walk again and you folks have got to take care of me and I want Howard to do the worrying, and I am going to lay here and take solid comfort.'    \*    \*    \*

"*A.* Why, at the same time before I left the room, I started out and I went back and said to him, 'Grandpa, I do wish you would take a life lease of this place. Dr. Howlett has hopes you will be up and you will want to run your business, and I wish you would take it.' He said, * *. * 'I know I am never going to walk again and you will have to take care of me and it is just as I want it,' and I went back again and I said, 'Grandpa, you know we would take care of you if you didn't have a penny,' and he said, 'I believe you would, Editha,' and that is all I said to him. I have done all I thought I could.''

In our opinion there was no undue influence, duress or fraud exercised upon plaintiff. He knew what he wanted and succeeded in getting it without being influenced by anyone.

The facts in the case at bar are to be distinguished from those in *Ferguson* v. *Ferguson,* 287 Mich. 714. In that case, an agreement was made between father and son whereby the father deeded the farm to his son and wife reserving a life lease and the son and daughter-in-law agreed to provide their father with a suitable home, give him proper care and maintenance, and a decent burial at death. In that case the son made no serious effort to carry out the contract and we decreed a cancellation of the deed.

In *Furgason* v. *Dunn,* 292 Mich. 115, plaintiff entered into an agreement with defendant, his father-in-law, wherein it was agreed that plaintiff and wife were to leave their home and live with defendant and make a home for him and at his death the real estate was to become the property of plaintiff. This agreement was carried out for approximately 12 years, when defendant sought to have it cancelled. In that case we denied defendant any relief.

In the case at bar, plaintiff was provided with a home, food, clothing and a certain amount of spend-

ing money. The record sustains defendants' claim that they have always been willing and able to care for plaintiff and did so for a period of 18 months. Plaintiff testified, "I was well treated while at defendants' home." Defendants have performed their part of the agreement insofar as it was possible for them to perform it. Moreover, defendants in reliance upon the agreement have procured machinery, remodeled their home and to some extent changed their course of life. They have a right to expect that plaintiff will carry out the terms of an agreement fairly entered into and understood by all interested parties.

The decree of the trial court is reversed and a decree will be entered dismissing plaintiff's bill of complaint. Defendants may recover costs.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred. WIEST, J., took no part in this decision.