CROFTS *v.* KOEPPLINGER.

1. EQUITY—RELIEF.
   Equity should not lend its aid to bring about a greater inequity.

2. SAME—RELIEF.
   Equity looks at the whole situation and grants or withholds relief as good conscience dictates.

3. APPEAL AND ERROR—STATEMENT OF QUESTIONS INVOLVED—QUESTIONS REVIEWABLE.
   Inconsequential collateral matters not included in statement of questions involved are not considered by Supreme Court on appeal in chancery case (Court Rule No. 67 [1933], as amended).

4. CANCELLATION OF INSTRUMENTS—CONTRACT FOR CARE OF WIDOWED PARENT—EVIDENCE.
   In suit by widowed father against daughter and her husband to set aside conveyances of a farm and two houses in a village and of certain personalty which had been given to defendants under oral contract to provide plaintiff with a home, care, and spending money for the rest of his life, decree for plaintiff that he receive a given sum as rental value of farm conveyed and that he be given a life lease of one of the houses but be required to pay taxes thereon and keep it repaired and insured *held,* justified by record.

Appeal from Saginaw; Lamb (Fred S.), J., presiding. Submitted January 31, 1945. (Docket No. 26, Calendar No. 42,774.) Decided April 9, 1945.

Bill by John D. Crofts against Pauline Crofts Koepplinger and husband to cancel deeds to real estate and recover personal property. Decree for plaintiff. Defendants appeal. Affirmed.

*Clarence J. Brainerd,* for plaintiff.

*Floyd T. Fuss,* for defendants.

BUSHNELL, J. Plaintiff John D. Crofts, in a chancery action begun in 1940, sought cancellation of deeds to a farm in Chesaning township and two properties located in the village of Chesaning, which he had given to his daughter, defendant Pauline Crofts Koepplinger, in 1935. He also claimed the right to recover some household goods, moneys then in the Chesaning State Bank, and some shares of stock in an elevator company at Chesaning.

Prior to the death of his wife in 1935, Crofts had been in poor health and his affairs had been handled by her. He had become financially involved, his 160-acre farm and other properties being in a run-down condition and heavily mortgaged, and he had no funds available with which to pay his debts and the funeral expenses of his wife.

It is his claim that the day after the funeral he made an oral agreement with his daughter in which she promised to provide him with a home and care the rest of his life, and with spending money equivalent to the rentals of the two houses in the village in consideration of the conveyance of his property to her. Deeds to the farm and the two village properties, known as the Detweiler and Meadow houses, were executed and recorded, and Crofts lived with

his daughter and her husband, defendant Arthur Koepplinger, on Koepplinger's farm in Maple Grove township until 1938, when, at Crofts' insistence, they all moved to his farm in Chesaning township. Crofts occupied a room of his choice, until he left the farm in 1940, shortly before the filing of his bill of complaint.

In the meanwhile, Arthur Koepplinger, who, according to the president of the Chesaning State Bank, was one of the outstanding farmers of the community, paid all the taxes and encumbrances against the properties, repaired the buildings and put them in a rentable condition, and settled all of Crofts' outstanding obligations. A sale of the farm livestock and other property was held and the proceeds were used in part to liquidate the indebtedness. In addition, Koepplinger paid out of his own funds considerable sums of money. No accurate record was kept of every item of expenditure, but Koepplinger accounted for at least an outlay on his part of $7,342 in addition to the proceeds of the sale of personalty.

Crofts claims that Koepplinger's outlay was not more than $6,065.44. The testimony shows considerable variance as to the value of the properties. According to the defendants, the entire present value of the farm and the two houses is not more than $10,000. Crofts claims a total value of $17,400. The trial judge determined that the value of properties was, at most, about $15,000. Taking Crofts' figure of the amount paid by Koepplinger as $6,065.44 would leave a net value of the properties conveyed by plaintiff to his daughter of about $9,000.

There is little need to recount the disputed facts which led to discord between the parties and Crofts' eventual departure from the farm, except to say

that at the time the claimed oral contract was made, Crofts was 58 years old and his age at this time is about 68. Defendant Pauline Koepplinger is Crofts' only child, and, so far as this record discloses, he is still a widower.

According to the findings of the trial judge, the Detweiler house has a rental value of about $18 a month and the Meadow house of $10 to $12 a month. The rental value of the farm in its present condition is approximately $600 to $700 per year.

The trial judge was of the opinion that the contract, made substantially as claimed by plaintiff, was breached by defendant Pauline Koepplinger, and that Crofts should be granted only such relief as will substantially compensate him for what he lost by reason of the breach. In arriving at this determination the trial judge relied upon the following statement in *Stewart* v. *Hunt,* 303 Mich. 161, 166.

"Equity should not lend its aid to bring about a greater inequity.

" 'Equity looks at the whole situation and grants or withholds relief as good conscience dictates.' *Thill* v. *Danna,* 240 Mich. 595."

He held that a life lease should be impressed upon the Detweiler property in order to provide a home for Crofts, and that the defendants should pay him annually, beginning April 15, 1943, the sum of $500 as "a part of the reasonable rental of the farm," and that a lien should be impressed upon the land to secure such annual payments in order to furnish Crofts with sufficient moneys to make himself comfortable; and that Crofts should keep the Detweiler house in good repair, pay all taxes and assessments when due; and keep the same insured for the benefit of his daughter; that the personal property in ques-

tion, including the elevator company stock and the moneys in the bank, subject, however, to the bank's lien, if any, should all be turned over to the plaintiff forthwith.

Defendants have appealed from a decree in which the foregoing terms were embodied. They contend that the trial judge erred in not requiring the plaintiff to do or offer to do equity; that he did not come into court with clean hands and was guilty of laches; that the contract was not established by the testimony, and that the decree is not supported by the pleadings and the evidence.

Although not included in their "Statement of Questions Involved," they also argue that, because the Honorable James E. O'Neill, Circuit Judge of Saginaw county, had entered an order in the cause adversely to their motion to dismiss plaintiff's bill of complaint, that he should have heard the case and not the Honorable Fred S. Lamb, who sat as a visiting circuit judge. They also insist that Judge Lamb should have required one of plaintiff's witnesses, Carl Schilbe, to return for cross-examination, or in the event of his nonappearance, that his testimony should be stricken. These collateral matters are inconsequential and, because of their noninclusion, will not be considered. Court Rule No. 67 (1933), as amended.

Notwithstanding consideration of the testimony *de novo,* we find nothing in the record to justify material disagreement with the conclusions reached by the trial judge. As stated in *Ferguson* v. *Ferguson,* 287 Mich. 714:

"This case is typical of most cases of its class in that it arises out of a transaction that never should have been consummated."

It is always difficult for a widowed father to conform to the mode of living of his children, and it is

still more difficult for a thrifty, hard-working couple, like the Koepplingers, to overlook the habits and shortcomings of a parent, especially one who is not in the best of health. The record is most persuasive that, had it not been for the prompt action of Arthur Koepplinger and his wife, Crofts would have eventually lost his farm and the Chesaning properties. We have no doubt that, as stated by Koepplinger, he would never have permitted his wife to accept her father's property had he known the facts as he now knows them.

The decree is affirmed, with costs to appellee.

STARR, C. J., and NORTH, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.