ADAM SPONABLE, AN INCOMPETENT PERSON, BY WASH-
INGTON SPONABLE, HIS GUARDIAN, v. LECTA
HANSON AND BELLE COOK.

*Deed—Mental incompetency—Evidence—Bona fide mortgagee.*

1. Where, soon after the commencement of proceedings in pro-
   bate court for the appointment of a guardian for an aged
   father as an incompetent person, he executed a deed of his
   home farm to a daughter in consideration of her agreement
   for his support, and a few weeks afterwards he was adjudged
   to be mentally incompetent by the judge of probate after a
   personal examination in said proceeding, and a guardian was
   appointed, who filed a bill to set aside the deed, in which suit
   the father was examined as a witness, and adjudged mentally
   incompetent by the circuit judge, the appellate court will
   require a strong showing before setting aside the findings of
   the two lower courts.

2. A decree setting aside a deed on the ground of the mental
   incompetency of the grantor to make it is sustained upon the
   testimony of the leading expert witness for the grantee that,
   when he privately examined the grantor, he did not know
   whether he had made a deed, a will, or a lease, and upon the
   opinion of the witness that the grantor was not competent to
   make a sale of his land for money, and protect his interest
   in it.

3. A mortgagee of the grantee of an incompetent person, whose
   brother acted as her agent in making the loan secured by the
   mortgage, and who drafted the deed to the mortgagor, and
   was present at its execution, cannot be regarded as a *bona
   fide* mortgagee without notice, but the lien of the mortgage
   will be sustained to the extent of the money received by the
   incompetent person from the mortgagor on account of the
   mortgage.

Appeal from Barry. (Hooker, J., Argued July 2,
1891. Decided July 28, 1891.

Bill to set aside a deed because of the mental incom-

petency of the grantor. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Stuart & Knappen* and *C. G. Holbrook,* for complainant.

*Smith & Colgrove,* for defendants.

GRANT, J. The bill in this case was filed to set aside a deed made by Adam Sponable to the defendant Lecta Hanson. It is alleged that the deed was obtained by undue influence practiced upon Adam Sponable by Lecta Hanson and her husband, and that Adam was mentally incompetent to execute the deed. Decree was rendered in favor of complainant, and defendants appeal.

The deed was executed March 20, 1889. Adam was then about 75 years old. His wife died on the 13th of the same month. Proceedings had been instituted in the probate court for the appointment of a guardian over complainant, upon the ground of his incompetency to manage, control, and dispose of his property. These proceedings were commenced just prior to the making of the deed, and the citation had been served upon the complainant.

The land conveyed consisted of 55 acres, which was complainant's homestead, and 30 acres of lowland, used mainly as a pasture, and was worth between $3,500 and $4,000. Camplainant had three sons and three daughters, of whom Lecta was one. Lecta lived with her father and mother most of the time till she was 37 years old, when she married. After her marriage, in 1874, she and her husband removed to Ohio, where they lived 3 years. They then returned and worked her father's farm on shares for 10 months. They left on account of some trouble, and in 1880 they again returned, and worked the farm upon shares for a year. They left again on account

of trouble, but returned in the fall of 1886, and again took the farm on shares, continuing to work it in that manner until this deed was made. The farm was productive, and yielded sufficient to cover all the household expenses. Complainant and his wife lived with the Hansons, the Hansons receiving two-thirds of the crops and complainant one-third. Mrs. Hanson testifies that her father paid the taxes, clothed himself and his wife, paid the physician's bills and the expenses of his wife's funeral, and paid one-half the expense of living the first winter. After that they divided the entire products, first using, however, from the joint property what was necessary for the table. Upon the execution of the deed, Mrs. Hanson loaned $200 from the defendant Cook, and gave her a mortgage upon the land to secure it. Of this money $100 was paid to Adam, and Mrs. Hanson's husband used the balance for his own private purposes. Not long before this time complainant owned considerable personal property, which he had sold and converted into money. It appeared that complainant had disposed of all this money except $10.

It will thus be seen that the relations which had existed between complainant and Mr. and Mrs. Hanson were based entirely upon contract. The record discloses no prejudice on the part of complainant against his other children. It does not appear that Mr. and Mrs. Hanson had rendered unrecompensed services to complainant, which would afford a reason for his deeding the greater part of his property to Mrs. Hanson. It is true that the deed provided that they should take care of him in the future. It was entirely competent for him thus to provide for his care, provided that he did it of his own free will, and was competent to understand the nature of the transaction. This transaction was

regarded by the defendant Hanson and her husband in the nature of. a contract, for she testified that she gave the mortgage to bind the bargain, and pay for the 30 acres, which 30 acres were worth from $400 to $600.

The court below did not pass, evidently, upon the question of undue influence. Undoubtedly the proper finding on this point in the case would be "not proven," though Mr. Hanson appears as the moving party whenever complainant proposed a deed of his property.

The circumstances surrounding the transaction are not such as to commend the conduct of Mr. and Mrs. Hanson to a court of equity. Her father was failing both physically and mentally. He was depressed by the loss of his wife, upon whose judgment and advice he had greatly relied during a married life of nearly 50 years. Common fairness would have dictated a consultation with her brothers and sisters. The undue haste with which Mr. and Mrs. Hanson at least permitted the transaction to be recorded is not commendable. Mr. Hanson went with complainant the previous fall to an attorney, who drew a deed similar to the one in controversy. Complainant's wife condemned the transaction, and refused to sign the deed, and nothing came of it. The attorney who drew the deed then notified the other children of this deed.

The result of the case must, however, be determined by the competency or incompetency of the complainant to make the deed. Forty-one witnesses were sworn, chiefly upon this point. Among them were several physicians, some of whom testified that they considered him competent to make the deed; others to the contrary. After a personal examination by the judge of probate, within a few weeks after the deed was made, the judge pronounced

him incompetent. He was also produced as a witness in the circuit court upon this hearing, and the learned circuit judge came to the same conclusion. One who has made a personal examination in such cases is certainly more competent to judge than those who have not, and who besides have not seen any of the witnesses. It must certainly be a strong showing which would warrant us in setting aside the finding of two courts in such a matter.

But upon the testimony of Dr. Pratt, the leading expert witness for the defendants, we find sufficient to sustain the decree. Dr. Pratt says, upon cross-examination, that he did not think complainant competent to make a sale of his land for money, and protect his interest in it. If he was not, then he was not competent to make the deed in question. Dr. Pratt further testified that, when he examined him privately, he did not know whether he had made to Mrs. Hanson a deed, a will, or a lease. The complainant, when upon the stand, testified that he supposed Mr. and Mrs. Hanson were still working the farm upon shares.

It would be unprofitable to discuss further the facts to be elicited from a record of 727 pages. The finding of the court that complainant was of unsound mind, and mentally incompetent to execute the deed, is correct.

It only remains to determine the rights of Mrs. Cook upon her mortgage. The court below sustained the mortgage as to $100, because complainant had received the money. True, Mrs. Cook had no actual knowledge of the condition of complainant, but the money was loaned through her brother, who drew the deed, was present at its execution, and was her agent in the transaction. We think, under this record, that Mrs. Cook cannot be regarded as a *bona fide* mortgagee without notice, and that her mortgage lien cannot be sustained,

except to the extent of the money received by complainant.

The decree is affirmed, with costs to complainant against defendant Hanson.

The other Justices concurred.