BILMAN *v.* KOLARIK.

1. Cancellation of Instruments—Deeds—Mental Incompetency —Inadequate Consideration.

A court of equity will set aside a conveyance of land by one who is subnormal mentally, where the consideration given for the property is grossly inadequate, although the grantor may not be absolutely disqualified, but is lacking in business judgment because of arrested mental development.[1]

2. Same—Reconveyance—Modification of Decree.

Decree permitting the purchaser to retain the land conveyed to him for a grossly inadequate consideration by one subnormal mentally, on the payment of an additional sum of money, is modified, on appeal, and reconveyance decreed.[2]

Cross-appeals from Leelanau; Gilbert (Parm C.), J. Submitted April 14, 1926. (Docket No. 94.) Decided June 7, 1926.

Bill by Elmer Bilman, guardian of Joseph Kirt, an incompetent, against Victor Kolarik to set aside a deed. From a decree for plaintiff, both parties appeal. Modified and affirmed.

*C. L. Dayton,* for plaintiff.

*J. J. Tweddle,* for defendant.

Sharpe, J. On February 12, 1924, Joseph Kirt conveyed certain lands in Leelanau county, which he had inherited from his father, to the defendant for an expressed consideration of $900. The deed was subject to two mortgages then on the lands, amounting to $700. This sum, and the interest accrued thereon, was treated as a part of the purchase price. Kirt re-

[1]Cancellation of Instruments, 9 C. J. §§ 39, 40; [2]Id., 9 C. J. §§ 205, 225 (Anno).

ceived but $100. Learning that Kirt and his mother were dissatisfied with the deal, the defendant placed the deed, which had not been recorded, in a bank at Sutton's Bay, with instructions to deliver it to Kirt on payment of $125. Of this Kirt had notice. It was left in the bank for two days, and, the money not having been paid, defendant took the deed and recorded it.

On May 3, 1924, plaintiff was duly appointed guardian of the property of Kirt, who was found by the probate court to be an incompetent, and qualified as such. He tendered to defendant the amount he had paid to Kirt, and demanded a conveyance of the property to him. On defendant's refusal, he filed this bill to secure such a conveyance, alleging the incompetency of Kirt and that the consideration was wholly inadequate. He offered therein to pay to defendant such sum as the court might find to be just and equitable.

On the hearing the trial court was not satisfied that the defendant had intentionally committed a fraud in his purchase. He found that the property was worth at least $1,600 and that, while Kirt was "apparently competent to be able to sign and acknowledge a deed," he "undoubtedly is lacking in business ability and foresight and judgment." He decreed that defendant might retain the property on payment to plaintiff of the sum of $700 and the costs, fixed at $50, within 30 days from the filing of the decree, and if not so paid, that the deed be set aside and the title vested in plaintiff, subject to the mortgages, on his payment to the defendant of the sum of $200. From this decree both parties appeal.

The proofs clearly show that Kirt was subnormal. He reached the sixth grade in school at the age of 16, having been conditioned in both the fourth and fifth grades. When the land in question came into his

possession on his reaching his majority in the fall of 1923, he mortgaged it and purchased a team and harness and did some work on it. He traded the team for a used Ford car, and the car for a truck, and it for another car of little or no value. He sold some timber on the land for much less than it was worth. The testimony of Kirt, who was called as a witness by the defendant, clearly indicates that he has no business judgment and that his want of it is due to a lack of mental development. He testified that he supposed he was to get $900 over and above the amount of the mortgages. We have not overlooked the opinion of Dr. Murphy that Kirt was competent to make a contract, but this opinion was qualified by the statement that he "probably would not use good judgment; throws his money away, in other words." The doctor was also asked:

"Now, doctor, isn't it a fact that you had expressed this, this boy was not strong-minded, but that this boy ought to stay there on the farm. That everybody was skinning the boy, and it was better to stay there on the farm, than to let him sell it foolishly to somebody else?"

and answered, "I think I did."

We are impressed by the defendant's testimony that he knew this young man had but little competency to do business or look after his own affairs, and that the land was worth much more than $900. He evidently expected that complaint would be made about his purchase. He kept the deed without recording it for nearly two weeks, and then left it at the bank, as before stated. He testified that Kirt said, "if I didn't buy it, he says somebody else will. He said, 'I will sell it if I have to give it away,' * * * and I took a chance myself." When asked why he did not buy when Kirt first offered it to him, he answered, "Well, I didn't want to take it from him; they will say I robbed him; that is the reason I didn't want to

take it. Well, when he told me he was going to sell it to somebody else if I wouldn't buy it, then I bought it," and said that he expected some people would find fault with him about it. While he stated that the land "is worth for farming purposes not more than $900," he admitted that he was offered for it "$2,000 and I wouldn't take it."

The rule governing such transactions is thus stated:

"It may be stated as settled law, that whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside." *Allore* v. *Jewell*, 94 U. S. 506, 511.

While we find no decision by this court in which the facts are similar to those here presented, the following cases are instructive as to the equitable doctrine on which the rule is founded: *Sponable* v. *Hanson*, 87 Mich. 204; *Hemphill* v. *Holford*, 88 Mich. 293; *Wagbo* v. *Smiseth*, 227 Mich. 313.

It is unfortunate that the defendant did not accept plaintiff's tender and make reconveyance. We cannot but conclude, as did the trial court, that the conveyance was executed under such circumstances that a court of equity must set it aside.

Plaintiff complains of the option permitted defendant in the decree. In our opinion it cannot be sustained. The defendant should have reconveyed when requested to do so.

A decree may be here entered modifying that appealed from in the respect stated. Plaintiff will have costs of both courts.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.