LOW *v.* LOW.

1. DEEDS—CANCELLATION OF INSTRUMENTS—CONSIDERATION—WEAK-
NESS OF MIND.

Equity will set aside a conveyance executed for a grossly in-
adequate consideration when in the person executing it there is
great weakness of mind from age, sickness, or any other
cause, which would not amount to an absolute disqualification.

2. SAME—ABUSE OF CONFIDENCE—MENTAL COMPETENCY.

Equity will set aside a conveyance to one who stands in a posi-
tion of confidence to the grantor who, though capable of under-
standing the nature of a business transaction, was unable
fairly to appreciate its consequences and overlooked many con-
siderations which would have led to sounder judgment and
the confidence has been abused.

3. CANCELLATION OF INSTRUMENTS—SUPPORT OF AGED MOTHER—
MENTAL COMPETENCY—MISTAKE.

Evidence sustained decree of trial court cancelling supplemental
agreement or rider to land contract for sale of farm on which
plaintiff, aged mother of defendant, had her home, and restor-
ing original provision because of her apparent inability to
protect herself, where evidence indicated she was sick, highly
nervous, very forgetful and her physical faculties somewhat
impaired and that neither she nor her son contemplated that
rider relieved him from obligation of supporting her.

Appeal from St. Clair; George (Fred W.), J.
Submitted April 5, 1946. (Docket No. 53, Calendar
No. 43,328.) Decided May 13, 1946.

Bill by Daisy Low against C. Fenton Low for the
cancellation of a rider amending a contract for sale
of land. Decree for plaintiff. Defendant appeals.
Affirmed.

Duress by unfair persuasion without fear, see 2 Restatement, Con-
tracts, § 497.

*Duncan J. McColl, Jr.,* for plaintiff.

*Davidson & Beauchamp,* for defendant.

STARR, J.  Plaintiff, a widow nearly 70 years old, is the mother of defendant C. Fenton Low.  In March, 1938, the mother executed a land contract whereby she agreed to sell her 80-acre farm property in China township, St. Clair county, to defendant C. Fenton Low and one Robert F. Low for $4,000.  The farm was subject to a mortgage of about $1,400, which the purchasers agreed to pay within two years, and the contract provided that the amount they paid on the principal of the mortgage would be credited on the principal of the land contract.  The balance due on the contract was to be paid in semiannual instalments of $100 each with interest at three per cent.  The contract contained a provision reading as follows:

"First party (plaintiff mother) reserves the right of possession and all income from the farm until the mortgage now on the premises has been paid by second parties and while she retains possession she agrees to pay the taxes out of the income from the farm, if sufficient for that purpose, and after the mortgage is paid second parties to have the right of possession and the income therefrom and first party to have the right to reside on said premises and *have her support therefrom for the balance of her life.*"

The record does not show what became of the interest of Robert Low, one of the purchasers named in the land contract.  However, all dealings subsequent to the execution of the contract appear to have been between the plaintiff and her son, defendant C. Fenton Low, and for the purpose of this opinion we shall assume that at the time of the pres-

ent litigation defendant held the entire purchaser's interest. He paid the mortgage on the farm and from time to time made payments to his mother, so that the balance due on the contract at the time of suit was approximately $1,450.

On June 5, 1944, the mother and son executed a supplemental agreement whereby the above-quoted paragraph was struck out and the following paragraphs substituted in place thereof:

"First party (plaintiff mother) shall have the right to possession of the dwelling house and yard located upon the farm for the rest of her life, to have and to use as she may see fit, but not the right to sell or encumber the same. In the event that she does not choose to occupy the same, then she may rent said dwelling house and the proceeds of said rental are to belong to the first party. Second party (defendant son) is to in no way interfere with first party's right of possession to the house so long as she may live. Second party shall have all the proceeds from the use of the farm whether by way of rental to outside tenants or by way of working the same, and *is hereby specifically relieved from any responsibility of providing support and maintenance for first party* other than by the payments specified in this contract, and by her use of the house and yard as aforesaid.

"It is further agreed that second party and/or his tenants or agents, shall have the right to access to the farm by means of the driveway running beside the house."

At this point it should be noted that the original paragraph of the contract provided that the mother should "have the right to reside on said premises (farm) and have her support therefrom for the balance of her life," and that the substituted paragraphs expressly provided that the mother "shall have the right to possession of the dwelling house

and yard located upon the farm" and that the son was "specifically relieved from any responsibility of providing support and maintenance" for his mother.

Trouble soon arose between the parties, and in December, 1944, the mother filed bill of complaint praying that the substitute paragraphs, or rider, last above quoted be canceled and that the original paragraph first above quoted be reinstated in the contract and be decreed to be in full force and effect. She alleged that at the time she executed the supplemental agreement in June, 1944, she was in a highly nervous condition and was unable to comprehend that she was waiving her right to future support as provided in the original contract. She alleged that her son unduly influenced her; that he induced her to execute the supplemental agreement by fraud and trickery; and that the supplemental agreement was without consideration. Defendant answered, denying the charges against him and asking that the bill be dismissed. During the course of the trial plaintiff was permitted to amend her bill of complaint so as to allege further that the supplemental agreement was executed through mutual mistake. The case was tried, and a decree was entered canceling the substitute paragraphs, or rider, and reinstating the original paragraph. Defendant appeals from this decree.

The record indicates that the mother was sick, was in a highly nervous condition and very forgetful at the time she executed the supplemental agreement, and that her mental and physical faculties were somewhat impaired. There is serious doubt as to whether she fully comprehended the meaning of the agreement and that she was thereby waiving her right to support from the farm during her lifetime. The record indicates there was some dis-

pute between defendant and his sisters regarding the support of their mother. However, defendant testified in effect that he did not understand the supplemental agreement relieved him from the obligation of supporting his mother. He testified in part:

"*Q.* \* \* \* That isn't what you understand, \* \* \* that you are to be relieved from all support?
"*A.* No.
"*Q.* In other words, \* \* \* you didn't understand that this exhibit B (supplemental agreement) relieved you from the responsibility of supporting your mother after you made the payment? \* \* \*

"*A.* Right. \* \* \*
"*Q.* \* \* \* You didn't think exhibit 2 (supplemental agreement) would relieve you from any responsibility of providing support and maintenance for your mother?
"*A.* \* \* \* No."

It would serve no useful purpose to discuss the testimony in detail. Suffice it to say that the case presents a situation in which the aid of a court of equity may properly be invoked to protect the rights of an aged mother, who, because of illness and impaired faculties, was apparently unable to protect herself. A somewhat similar situation was presented in *Clement* v. *Smith*, 293 Mich. 393. In that case we said (p. 396):

"It is said that equity will set aside a conveyance executed for a grossly inadequate consideration when there is great weakness of mind in the person executing it from age, sickness, or any other cause, which would not amount to an absolute disqualification. *Allore* v. *Jewell*, 94 U. S. 506 (24 L. Ed. 260); *Bilman* v. *Kolarik*, 234 Mich. 689; *Beattie* v. *Bower*,

290 Mich. 517. Though the grantor may have been capable of understanding the nature of a business transaction, if there was inability fairly to appreciate its consequences which resulted in overlooking many considerations which would lead to sounder judgment, there is an exposure to imposition by those in confidence. Where the confidence has been abused, as under the facts before us, equity will not stand by with folded arms. *Seeley* v. *Price,* 14 Mich. 541. The conclusion of the trial judge is fortified by the fact that the conveyance left plaintiff without any security for her future support, for her life estate in the property would be practically unmarketable."

See, also, *Beattie* v. *Bower,* 290 Mich. 517; *Ferguson* v. *Ferguson,* 287 Mich. 714; *Connor* v. *Harris,* 258 Mich. 670; *Baas* v. *Zinke,* 218 Mich. 552; *Lockwood* v. *Lockwood,* 124 Mich. 627.

The only question raised by defendant on this appeal is whether or not there was evidence supporting the decree of the trial court. Our *de novo* review of the record convinces us that the supplemental agreement, or rider, should be canceled and that the original provision in the land contract should be restored and reinstated. The trial court saw and heard these parties and their witnesses and was in a better position to judge the credibility of and weight to be given their testimony. There was evidence supporting the court's findings and decree. We are not disposed to interfere with his conclusions, which, we believe, properly determined the rights of the parties.

The decree is affirmed, with costs of both courts to plaintiff.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.