KNIGHT v. BEHRINGER.

1. VENDOR AND PURCHASER—FIDUCIARIES—EVIDENCE.
    In suit to set aside land contract from plaintiff's father to de-
    fendant, their sister, evidence failed to establish that defend-
    ant acted in the capacity of a confidential adviser to, or that
    she even counselled with, her father in business matters.

2. SAME—FIDUCIARIES—UNDUE INFLUENCE—BURDEN OF PROOF—
    EVIDENCE.
    The fact that a parent has implicit confidence in his adult child
    is not alone sufficient to create a fiduciary relation between
    them imposing burden of proof on the child to establish lack
    of undue influence in obtaining land contract of home they oc-
    cupied in common.

3. SAME—FIDUCIARY—FINDING OF TRIAL COURT—EVIDENCE.
    Trial court's finding that fiduciary relation did not exist between
    defendant sister of plaintiffs and their father held, correct,
    notwithstanding there was a close association between them
    extending over a period of several years, where it appears he
    was neither physically nor mentally incapacitated in spite of
    his age, his physician attested to his competency to manage
    his own business and record fails to suggest defendant domi-
    nated or controlled him even in transaction resulting in land
    contract which plaintiffs seek to set aside.

4. SAME—LAND CONTRACT—UNDUE INFLUENCE—OPPORTUNITY.
    Mere opportunity to exercise undue influence in the making of a
    land contract whereby balance due at vendor's death should be
    cancelled, is insufficient to justify a conclusion that it existed.

5. SAME—FRAUD—DURESS—UNDUE INFLUENCE—OPPORTUNITY.
    The mere fact that defendant daughter lived with her father
    over a period of years before execution of land contract, which
    plaintiffs seek to set aside, does not give rise to any infer-

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5] 9 Am Jur, Cancelation of Instruments, § 20.

ence that her father was a victim of fraud, duress, or undue influence exerted by her in connection with land contract whereby balance due upon his death was to be cancelled.

6. Same—Land Contract—Care and Keep—Mental Competency —Undue Influence.

Land contract was properly held valid where payments by defendant daughter to her father were to be made monthly as her contribution toward running expenses of home they were to occupy in common, cost to her of furnishing him wearing apparel, medical, hospital or nursing expenses to be indorsed at end of month made and balance cancelled at his death, and it is admitted that deceased was mentally competent and there is no showing defendant exercised any undue influence upon him.

Appeal from Washtenaw; McDonald (Archie D.), J., presiding. Submitted October 5, 1950. (Docket No. 35, Calendar No. 44,846.) Decided December 5, 1950.

Bill by Raymond C. Knight and others against Edith L. Behringer to set aside a land contract. Decree for defendant. Plaintiffs appeal. Affirmed.

*William R. Kelley,* for plaintiffs.

*Jacob F. Fahrner* and *James C. Hendley* (*Jacob F. Fahrner, Jr.,* of counsel), for defendant.

Carr, J. The parties to this case are the children and heirs at law of Charles P. Knight who died intestate October 2, 1949. At the time of his death Mr. Knight was 87 years of age. In the month of June preceding his death he entered into a land contract with defendant by the terms of which, for an expressed consideration of $5,000, he agreed to sell to her his home in the city of Ann Arbor. The instrument provided that the parties were to occupy the property in common, that Mrs. Behringer was

to pay the "running expenses," and that in consideration thereof the sum of $75 per month was to be credited on the contract as the vendor's share of such expenses.

In addition to the usual provisions ordinarily found in a land contract, the parties stipulated that in the event that it became necessary for the vendee to furnish wearing apparel or medical, hospital or nursing service to the vendor, the cost of such item should be indorsed on the contract at the end of the month in which the expenditures were made. It was further provided that if the vendor died before the completion of the land contract the balance due at that time should be cancelled and the vendee should be entitled to a deed of the premises. In the event of her death before complete performance, the contract was to be cancelled, with the right on the part of her heirs to a return of contributions made by her, as of the date of the death of the vendor or of the sale of the property by him. The contract was dated April 1, 1949. Defendant claims that this was done because the payment by her of expenses, as provided for in the contract, began at that time. Her testimony in this respect is not contradicted.

Following the execution of the contract Mr. Knight and the defendant occupied the property in common. No claim is made that Mrs. Behringer did not perform her undertaking to the satisfaction of her father. Following his death, however, the plaintiffs instituted the present suit to set aside the contract, claiming that Charles P. Knight was mentally incapable of entering into the agreement, and further that he had done so as the result of fraud, duress and undue influence exerted against him by defendant. On the trial of the case in circuit court counsel for plaintiffs withdrew the claim of mental incompetency, conceding that at the time the contract

was executed the mental faculties of Mr. Knight were not impaired.

After listening to the proofs of the parties, the trial court came to the conclusion that the charges of fraud, duress, and undue influence had not been sustained. A decree was accordingly entered denying the relief sought and dismissing the bill of complaint. Plaintiffs have appealed, claiming that the trial court was in error in sustaining the land contract.

On behalf of appellants it is insisted that there was a fiduciary relation existing between defendant and her father at the time the land contract was executed, of such character as to place the burden of proof on her to negative fraud, undue influence, duress or over-reaching on her part. Emphasis is placed on her testimony that her father trusted her implicitly. The relations between the parties were evidently harmonious and satisfactory to both. In 1941, defendant, during the lifetime of her mother, became an inmate of the home for the purpose of assisting in the care of both parents and relieving them, in part at least, from the duties incident to the operation of the household. After the mother's death in 1943, defendant continued in the home with her father. During a portion of the time, defendant, who had 3 children, worked outside the home.

At different times the father sought to obtain old-age assistance but was not successful. In March, 1949, he invited his children to his home for the purpose of discussing with them his future support. It does not appear that any of the plaintiffs were willing to assume obligations for his care, apparently believing that his property should be used for that purpose. In any event no agreement was reached other than an understanding that some arrangement would be worked out between defendant and the father. After negotiations covering a pe-

riod of several weeks, the land contract involved in the instant suit was executed.

Notwithstanding the close association between defendant and the father extending over a period of several years, it does not appear that she acted in the capacity of a confidential adviser, or that she counselled with him in business matters, or even discussed such matters with him other than in the course of the negotiations leading up to the making of the various arrangements between them, including the contract in issue here. The evidence in the case indicates clearly that Charles P. Knight was capable of managing his own affairs. Notwithstanding his advanced age he was not incapacitated either physically or mentally. He acted as treasurer of a local grange and kept its books. The testimony of a physician who attended him from time to time preceding his death, including the day prior thereto, is uncontradicted and indicates that Mr. Knight was a man fully competent to manage his business matters and inclined to follow his own ideas. There is nothing in this record to suggest that he was dominated or controlled by the defendant. The fact that he had implicit confidence in her was not sufficient to create a fiduciary relation. Under the facts of this case the legal principles recognized and applied in *Beattie* v. *Bower*, 290 Mich 517, and prior decisions cited there in the majority opinion, are not applicable. Likewise, *Smith* v. *Cuddy*, 96 Mich 562, and *Low* v. *Low*, 314 Mich 370, cited by counsel for the plaintiffs, are clearly distinguishable from the instant controversy on the basis of the facts involved.

In *Re Cottrell's Estate*, 235 Mich 627, the question at issue was the validity of a will. Contestants claimed that the burden of proof rested on proponent to establish a want of undue influence, on the theory that a fiduciary relation existed between herself and the testator, her father. A motion for a directed

verdict based on such claim was made and over-ruled. In sustaining such action it was said:

"Before the burden can be cast on proponent, it must be shown that the fiduciary relations exist (*In re Conner's Estate*, 230 Mich 399); and the fact that she was living with testator when the will was made did not establish such relations (*In re Carlson's Estate*, 218 Mich 262); nor does the fact that she assisted· him in his business affairs establish such relation (*Blackman* v. *Andrews*, 150 Mich 322). There is nothing upon this record which would justify adopting the rule applicable to fiduciary relations."

The language quoted may well be applied to the facts in the present controversy. There is nothing in this record on which to predicate a finding that a fiduciary relation existed between defendant and her father. On the contrary, the evidence clearly tends to establish that there was no such relation. The trial court was correct in his conclusion in this respect.

This Court has repeatedly declared that mere opportunity to exert undue influence is insufficient to justify a conclusion that it existed. *In re Livingston's Estate*, 295 Mich 637, 643; *Maahs* v. *Maahs*, 307 Mich 549, 563; *In re Vreeland's Estate*, 323 Mich 316, 321. The mere fact that the parties lived together over a period of years does not give rise to any inference that Charles P. Knight was a victim of fraud, duress, or undue influence exerted by defendant. *In re Hannan's Estate*, 315 Mich 102.

It is the claim of the plaintiffs that following the death of their father a conversation occurred between them, or some of them, and the defendant, wherein the latter indicated that she had threatened to leave the father's home if he did not make arrangements satisfactory to her. Defendant denied

making the specific statements claimed, testifying in substance that the conversation between herself and her father with reference to her obtaining an apartment came up at a time when he was considering entering a certain home for aged people, and that he asked her to find out how much an apartment would cost her and what her expenses would be therein. She undertook to obtain the desired information, testifying further that the plan was not carried out because her father learned that he would have to turn over his property to the home and he did not wish to do that. She further stated in this connection that her father then suggested that she buy his home, paying on the contract the equivalent of what an apartment would cost her, and making required payments by taking care of the expenses. However, we do not think that the precise details of the conversation between defendant and her father, with reference to the matter in question, are of controlling significance. Obviously defendant was under no compulsion to remain in the father's home or to assume his care. She had, as the trial judge pointed out in his opinion, the right to insist that she should be adequately protected if she agreed to assume the burden. The query here is not whether she insisted on proper protection for herself but rather whether Charles P. Knight was induced to enter into the land contract in question because of fraud, duress, or undue influence exerted against him to such an extent as to overcome his mind and will.

Under the undisputed facts the trial court was correct in holding that plaintiffs had not sustained the charges made by them in their bill of complaint and were in consequence not entitled to the relief sought. The fact that plaintiffs were not advised of the existence of the contract until after the father's death does not affect the situation. No obligation rested on either the defendant or Charles P.

Knight to advise them as to the arrangement that had been made. *In re Johnson's Estate,* 326 Mich 310, 315. The record not only fails to show the existence of fraud, duress or undue influence, as alleged by plaintiffs, but on the contrary indicates affirmatively that in executing the land contract Mr. Knight acted of his own volition, and that the instrument was prepared by his attorney in accordance with his instructions. If the burden of proof with reference to the issue were deemed to rest on the defendant because of the existence of a fiduciary relation between herself and her father, as claimed by appellants, the conclusion would be fully justified on this record that she had sustained such burden.

The decree of the trial court is affirmed, with costs to defendant.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.