## KOLASINSKI v. HUSTON.

1. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF TRIAL COURT —EVIDENCE—WITNESSES.

   The Supreme Court hears chancery cases *de novo* on the record before it and, while not restricted by the findings of the trial court, due weight is given to such findings where the trial court had the advantage of seeing and hearing witnesses present and observing the mental and physical condition of elderly plaintiff who was seeking to cancel a deed he had executed to his stepdaughter who had simultaneously executed an agreement to provide him with necessities, including medical and hospital expenses, and a home.

2. DEEDS—FRAUD—EVIDENCE—CONSIDERATION—HOME—PAYMENTS.

   Elderly plaintiff's claim that he was induced to sign a quitclaim deed to his stepdaughter by reason of her fraud *held,* not sustained under record presented, in view of testimony corroborating defendant that there was valuable consideration running to plaintiff for the deed by way of previous payments made to, or on behalf of, plaintiff and promise to provide him with a home for the balance of his life.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 10, 1955. (Docket No. 57, Calendar No. 46,457.)  Decided October 3, 1955.

Bill by Adam Kolasinski against Lillian Ptaszek Huston to cancel deed and assignment because of alleged fraud. Bill dismissed. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 815.
[2] 16 Am Jur, Deeds § 30 *et seq.*

*Michael A. Guest,* for plaintiff.

*Judson B. Robb,* for defendant.

CARR, C. J.  Plaintiff brought this suit in circuit court asking that certain conveyances executed by him of interests in a parcel of land in the city of Detroit be cancelled.  Said property is referred to in the record as located at 6560 Canton avenue.  In 1943 plaintiff and his wife acquired the vendee's interest under a land contract for the sale and purchase of the property.  Mrs. Kolasinski deceased in 1948.  Plaintiff alleged in his original bill of complaint that on the 24th of February, 1950, he signed a quitclaim deed conveying the premises to defendant, reserving a life interest in himself.  The pleading further averred that defendant procured the execution of said deed by falsely representing to him that it was a power of attorney.  The cancellation of said conveyance was sought on the ground of fraud.  No claim was asserted that there was undue influence employed against plaintiff, or that he was at the time mentally incompetent.

It further appears from the record that at the time of the execution of the deed, above referred to, a contract was prepared by the terms and conditions of which defendant, by way of consideration for the deed, agreed to provide plaintiff with necessities when required, including medical and hospital expenses, and a home.  It further appears that in September, 1951, plaintiff assigned to defendant the vendee's interest under the land contract, above mentioned, said assignment reciting that the unpaid balance owing was the sum of $985.97, with interest from July 9, 1951.  This amount the defendant assumed and agreed to pay.  By amendment to his bill of complaint plaintiff alleged that he had no recollection of executing this assignment, but ad-

mitted that his signature appeared thereon. The amendment prayed cancellation of the assignment on the ground that it had been procured by fraud. It may be noted in this connection that the pleading does not set forth the means by which such alleged fraud was accomplished. On the trial of the case, plaintiff testified that he did not recall executing the assignment but identified his signature thereon. It is somewhat significant in this connection that he recalled the giving of a mortgage on the property that defendant was supposed to pay.

Defendant, by answer to the bill of complaint and the amendment thereto, denied that the execution of the instruments in question was procured by fraud or misrepresentation. She was the daughter of plaintiff's wife who died in 1948, and on the trial in circuit court she testified that over a period of years prior to the mother's death she had continually assisted plaintiff and her mother in financial matters and by performing services for them. She claimed specifically that when the vendee's interest under the land contract was acquired in 1943 she contributed $1,000 toward the purchase price. On behalf of plaintiff it was asserted that the amount so advanced had been repaid to defendant's then husband. There is no explanation, however, of the failure to make payment to defendant. She disclaimed any knowledge of it, and the record does not justify the conclusion that she either received the payment or acquiesced in her husband's doing so.

Following the death of her mother, it is undisputed that defendant endeavored to assist plaintiff in the conduct of his affairs. It was her claim on the trial that the quitclaim deed executed February 24, 1950, and the collateral agreement for plaintiff's support as required, resulted from the understanding and agreement of the parties therefor. She denied that the deed was represented to be a power of attorney.

In substance it was her claim that plaintiff had in-dicated to her by his statements that certain other persons were endeavoring to get control of his prop-erty, and that the deed and support agreement were executed in part to protect plaintiff and also as a recognition of obligations owing to defendant by plaintiff because of various acts on her part in his behalf. These included payments by her on the land contract, services rendered, the payment of obliga-tions arising by way of hospital bills due to the ill-ness of the mother for some period of time prior to her death, and also the purchase for plaintiff and Mrs. Kolasinski of various articles for use in their home as well as for improvements within the home. The record fully supports the finding of the trial judge that such payments had been made and serv-ices rendered as claimed by defendant.

In his testimony plaintiff denied many of defend-ant's claims. It is significant, however, that insofar as the claim of fraud is concerned her testimony is corroborated by that of the attorney who prepared the quitclaim deed and the accompanying contract. In his testimony the attorney stated that the parties came to his office together, that he had known plain-tiff previously, having performed professional serv-ices in his behalf, and that he was also acquainted with defendant. According to his version of what occurred at the time, directions were given to him as to what the parties desired. Plaintiff did most of the talking for himself and defendant, explaining that they wanted a deed prepared and the collateral contract drawn. The witness stated very positively that he talked with plaintiff in the Polish language, that he explained the transaction carefully, and that he repeated his explanation to the end that plain-tiff might be fully informed as to his rights and the effect of the deed and contract. The trial judge, after listening to the testimony of the parties and

their witnesses, came to the conclusion that plaintiff's claim of fraud was not sustained, and that the facts were as claimed by defendant and by the attorney who prepared the deed and contract. A decree was accordingly entered dismissing the bill of complaint. From such decree plaintiff has appealed.

While we hear the cause *de novo* on the record before us, we cannot say that had we listened to the testimony of the witnesses, and determined the issue involved in the first instance, we would have reached a conclusion at variance with the opinion of the trial judge. Plaintiff at the time of the execution of the deed that he now seeks to set aside was 74, or possibly 75, years of age. He was then working in Detroit and continued in his employment until the latter part of December, 1950. As before noted, no claim of undue influence or lack of mental capacity is involved. The sole issue under the pleadings is whether plaintiff has established that he was induced to sign the deed because of fraudulent representations on the part of defendant that it was a power of attorney. We are in accord with the finding of the trial court that the claim was not sustained.

In *Atzinger* v. *Atzinger,* 325 Mich 78, 84, in discussing an analogous question, it was said:

"In the case at bar the trial court had the advantage of seeing and hearing witnesses present and observing the mental and physical condition of plaintiff at the time of the trial. In speaking of plaintiff the court said: 'She did not appear to this court to be a person who was mentally incompetent in any way.' We hear chancery cases *de novo* and arrive at our own conclusion on the issues involved. We are not restricted by the findings of the trial court, but due weight is given to such findings of fact. On the record before us we think the trial court correctly determined the issue relating to the deed."

The foregoing statement is applicable to the situation presented in the instant case. See, also, *Knight v. Behringer,* 329 Mich 24.

The decree is affirmed, with costs to appellee.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.