In re VREELAND'S ESTATE.

1. WILLS—MENTAL COMPETENCY—FINDINGS OF TRIAL COURT—EVIDENCE.

Where there is competent evidence to show that testator, at time he executed his will some 12 days before he died, knew what property he had and who were the natural objects of his bounty, finding of trial court on appeal of disinherited only child in will contest that testator was mentally competent is not disturbed in view of conflicting testimony on issue of mental competency.

2. SAME—UNDUE INFLUENCE—BURDEN OF PROOF—FINDINGS OF TRIAL COURT—EVIDENCE.

Where there is competent testimony to show deceased was urged to make a will and it appears there were opportunities to exercise undue influence, but little, if any, testimony to show that he was urged to make a will whereby testator's only son was disinherited, and the bulk of his estate left to his mother-in-law and a cousin by marriage, finding of trial court that contestant son had failed to maintain his burden of proof on issue of undue influence is not disturbed.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 22, 1948. (Docket No. 66, Calendar No. 44,187.) Decided December 17, 1948.

In the matter of the Estate of Frank M. Vreeland, deceased. The last will of Frank M. Vreeland was presented for probate. Cecil Vreeland objected ● thereto. Contest certified to circuit court. Judg-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am. Jur., Wills, § 64.
[2] 57 Am. Jur., Wills, § 438.
[2] Presumption and burden of proof as to undue influence on testator. 66 A.L.R. 228.

ment for proponent.   Contestant appeals.   Affirmed.

*Robert S. Marx, Lawrence I. Levi* and *Orville J. Thill (Oscar A. Kaufman,* of counsel), for proponent.

*Fred B. Hill (Daniel M. Lynch,* of counsel), for contestant.

SHARPE, J.   This is an appeal in a will contest case.   Frank M. Vreeland died May 19, 1947.   He executed what is purported to be his last will and testament 12 days before his death.   He left as his only heir his son, Cecil R. Vreeland, his wife, Pearl Vreeland, having died on May 1, 1947.   Frank M. Vreeland was 78 years of age at the time of his death and lived on a farm in Wayne county, Michigan. He left an estate of approximately $41,000.

The purported will was executed in the office of Oscar A. Kaufman in Detroit on May 7, 1947.   After Mr. Vreeland conferred with Mr. Kaufman, the will was dictated by Mr. Kaufman in Mr. Vreeland's presence.   Mr. Vreeland did not read the typewritten will, however, it was read to him after it was executed.   The will was then deposited with the clerk of the probate court.

The will provided for the following distribution of property:

1. To testator's son, Cecil R. Vreeland, the sum of one dollar;

2. To a friend, Charles Daniels, of Flat Rock, Michigan, 10 acres of farm land, to be selected by the executor named in the will;

3. To the mother-in-law of said deceased, Clara MacArthur, of Flat Rock, Michigan, the use, for her natural lifetime, of the residence in which the deceased was living at the time of his death together

with all the furniture and household belongings located therein, including all articles of jewelry and other personal effects which were gifts absolute, and certain farm lands adjoining the residence; excepting therefrom the 10 acres given to Charles Daniels. In addition thereto, a provision was made for the payment to Clara MacArthur of $20 per week during the remainder of her life;

4. To his cousin, James Vreeland, of Flat Rock, Michigan, the sum of $1,000;

5. In the residuary clause the entire balance of his estate is left to Wilma Nichols, of Dubuque, Iowa, whom he describes as his niece, but who was in fact a cousin by marriage, being a first cousin of Pearl Vreeland, his wife.

The will was offered for probate in the probate court of Wayne county on May 21, 1947. Objections to the probate of the will were filed by Cecil R. Vreeland the sole heir of deceased on the grounds of mental incompetency and undue influence.

The will contest was certified to the circuit court of Wayne county and tried without a jury. The trial judge found in favor of proponent and an order was entered sustaining the will.

Contestant offered evidence at the trial on the issue of mental incompetency to the effect that during the last 2 or 3 years of Mr. Vreeland's life, he was in the habit of walking against a red light in crossing a street; that in carrying on a conversation he could not keep his mind on the subject under discussion and depended largely upon his wife in making decisions; that he did not recognize friends of long standing, was not capable of transacting business without the assistance of his attorney, and was not able to comprehend simple telephone conversations; that deceased indulged in irrational and unsound conversations immediately preceding and following the death of his wife; that he got lost

in his neighborhood; and that for 2 or 3 years prior to his death he was failing physically and mentally.

Proponent offered evidence on the above mentioned issue to the effect that one witness saw and talked with deceased almost daily for a month before his death; and that on each occasion he recognized her and conversed coherently with her. Another witness saw deceased frequently up to the time of his death and his conversations with her were always normal. Two public officials, one an engineer and the other connected with the Wayne county board of taxation, testified they saw the deceased in April, 1947, and there was nothing about his manner or speech or expression different from what it had been in years past. A telephone operator testified that she had talked with deceased in May, 1947 and his conversation, manner of expression and conduct were the same as they had been for years. A minister testified that he visited deceased eight times in April, 1947, and twice in May, 1947; and that he did not observe anything in deceased's conversation that appeared incoherent or unbalanced in any way.

In an opinion rendered, the trial court stated: "The deceased was mentally competent at the time he was at the office of his attorney to execute the will." It appears to us that the mental competency of the deceased at the time he executed the purported will presents a question of fact which the trial court found in favor of the proponent. We cannot say that there was error in such a decision. There is competent evidence to show that testator knew what property he had and who were the natural objects of his bounty. We are in accord with the finding of the trial court upon this question of fact.

It is also urged that testator executed the purported will as a result of undue influence. In a brief filed by contestant it is stated:

"In the testimony of Agnes Braun we find that Mrs. MacArthur, both before and after the death of Mrs. Vreeland, kept nagging at Mr. Vreeland to make the will, and that after he had made the will the nagging stopped; that there was no peace in the household until Mr. Vreeland made the will, and after that he was allowed to spend more time upstairs and on the front porch, whereas before that he had been relegated for the most part to the basement. In her cross-examination it is reiterated that no peace was given to deceased by Mrs. MacArthur until the will was executed. It also appears that at about that time Mr. Nichols, the father of the residuary legatee and the chief beneficiary under the will, appeared upon the scene and took charge of things in the household relative to the arrangements for the funeral of Mrs. Vreeland.

"It is also evident from the testimony that Charles Nichols, from the time of his coming upon the scene, dominated the situation and directed the affairs of the Vreeland household until his departure. It also appears that he accompanied Mr. Vreeland to the office of Mr. Kaufman when the will was executed, and that after the will was executed he left the next morning for his home in Iowa. It further appears that when the will was read he was asked if it was satisfactory to him and he replied that it was, and before leaving for his home told Mr. Vreeland and Mrs. MacArthur that he had done everything he could for them and that he was going back to Iowa."

It is to be noted that the will bequeaths to Charles Daniels 10 acres of land; to Clara MacArthur the use of his residence and $20 per week during her lifetime; to James Vreeland $1,000; and to Wilma Nichols, a cousin by marriage, the residue of the estate.

In the opinion rendered, the trial court stated:

"I do not find any word here of any importance from the contestant that the proponent Nichols or

any of the other beneficiaries in this will ever prodded the deceased or expressed any prejudice or ill-feeling toward Cecil Vreeland.  *  *  *

"I am positive from viewing the witness, Wilma Nichols, and listening to her testimony, that she in no way attempted to influence the deceased to benefit her in the will and that she was more or less his pet and the only minor child in the entire mentioned personnel in this case whom he might feel strongly attached to, and there is nothing here to indicate that she exercised any pressure for her own benefit."

On the question of undue influence, the trial court also stated: "Contestant has failed to maintain the burden of proof that rests upon him." There is competent testimony to show that deceased was urged to make a will, but little, if any, testimony to show that he was urged to make a will with the provisions which appear therein.

It appears uncontradicted that on the morning of the day that the will was executed, deceased was driven to Detroit by Mr. Law, accompanied by Mr. Nichols. They went to the office of Mr. Kaufman where deceased discussed the provisions of his will only with Mr. Kaufman, who then called in his secretary and dictated the will to her in the presence of deceased. The will was typed, signed by deceased and witnessed. It also appears that after the will had been executed, it was read to deceased who acknowledged that it was all right. In our opinion the most that can be said for the testimony produced by contestant is that there were opportunities for the exercise of undue influence, but as was held in *Re Alvord's Estate,* 258 Mich. 497, mere opportunity to exercise undue influence does not effect the validity of the will. We are in accord with the finding of

fact of the trial court on the question of undue influence.

The judgment is affirmed, with costs to appellees.

BUSHNELL, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.