FIFIELD *v.* CROWE.

1. INSURANCE—CHANGE OF BENEFICIARY—INSURANCE AGENT.

The personal representative of estate of deceased annuitant and other subsequent beneficiaries can have no better ground for cancellation of changes of beneficiaries than the deceased annuitant who lived 14 years after such changes to the insurance company agent who had sold her the 2 policies less than 2 years theretofore, where it appears she had possession of the policies at times during the 14-year period and it is not shown she ever questioned or sought to repudiate or cancel the changes.

2. SAME—CHANGE OF BENEFICIARY—IMPOSITION UPON INSURED.

Evidence presented in suit to set aside changes of beneficiaries which had been made over 14 years prior to insured's death *held,* insufficient to establish that defendant insurance agent took advantage of her either in the issuance of the annuity policies or in the changes to himself as beneficiary.

3. SAME—CHANGE OF BENEFICIARY—INSURANCE AGENT—GOOD FAITH.

Good faith of defendant insurance agent who had sold deceased 2 annuity policies in which the beneficiary was changed to the agent within 2 years of their issuance *held,* affirmatively established by testimony of his wife which the trial judge accepted as credible.

4. SAME—CHANGE OF BENEFICIARY—UNDUE INFLUENCE—MERE OPPORTUNITY.

Mere opportunity to exert undue influence in obtaining a change of beneficiary to insurance policies is insufficient to justify the conclusion that it existed.

5. SAME—CHANGE OF BENEFICIARY—FRAUD—EVIDENCE—PREJUDICE.

Bills to set aside changes of beneficiaries in 2 annuity policies on ground of fraud, filed nearly 15 years after changes had been executed and after death of witness to the execution and the

---

REFERENCES FOR POINTS IN HEADNOTES

[1-5] Generally as to avoidance of change of beneficiary of insurance policy upon ground of fraud, mistake, duress, or mental incompetency, see 29 Am Jur, Insurance § 1322; 105 ALR 950.

insured, are dismissed solely for failure to prove fraud relied on, notwithstanding court is unable to say the insurance agent who became the beneficiary was not prejudiced by the long delay.

Appeal from Barry; McDonald (Archie D.), J. Submitted October 8, 1952. (Docket No. 25, Calendar No. 45,561.) Decided December 9, 1952.

Bill by William Fifield, administrator of the estate of Marie C. Fifield, deceased, and Minnie Maser Thompson against Roy E. Crowe and New York Life Insurance Company, a foreign corporation, and bill by the administrator and Hazel T. Alexander, guardian of Joyce Marie Alexander, against same defendants to set aside changes of beneficiaries and for an accounting. Decrees for defendants. Plaintiffs appeal. Affirmed.

*J. Franklin Huntley* and *Linsey, Shivel, Phelps & Vander Wal,* for plaintiffs.

*Millard Vandervoort,* for defendant Crowe.

*North & Allen,* for defendant New York Life Insurance Company.

REID, J.   Two bills of complaint were by stipulation in practical effect consolidated for the purposes of hearing and again on appeal. Each of the 2 bills of complaint is founded upon a separate annuity policy in which Marie C. Fifield, now deceased, was the annuitant. Each policy was a single-premium policy, being a paid-up annuity policy. The bills each charged defendant Crowe with breach of confidential relationship and fraud. The trial court did not expressly find that there existed a confidential relationship but did find there was no proof of

fraud. From decrees dismissing the bills with prejudice, plaintiffs appeal.

On December 16, 1932, William Madison Stoddard died. He was then the husband of the annuitant who is now also deceased. Stoddard's life was insured by the New York Life Insurance Company and the deceased's wife Marie C. Stoddard (later Fifield) was beneficiary. Defendant Roy E. Crowe, agent for the defendant New York Life Insurance Company, attended to the details of settlement of the policies and made the payment of the proceeds to Mrs. Stoddard, later Fifield.

Early in 1934, Mrs. Stoddard (later Fifield) notified defendant Crowe that she desired to invest the proceeds of her insurance money with defendant insurance company and on March 19, 1934, defendant Crowe as agent for the defendant life insurance company, sold to Mrs. Stoddard (later Fifield) a single premium ($3,000) annuity policy in which the beneficiary (to receive proceeds at the death of the annuitant Mrs. Stoddard) was named as Minnie Maser Thompson, a sister of Mrs. Stoddard. On June 21, 1934, defendant Crowe sold to Mrs. Stoddard another single-premium annuity policy (this one being for $1,000) in which the beneficiary (to receive the proceeds on the annuitant's death) was named as Joyce Marie Alexander, a niece of Mrs. Stoddard. Plaintiffs claim that in the matter of the procuring and sale of these policies, the deceased annuitant Mrs. Stoddard sought the advice of defendant Crowe and acted upon his advice in the purchase of the policies. Plaintiffs' claim is that Crowe's relationship toward Mrs. Stoddard was confidential and that Crowe therein owed to Mrs. Stoddard the duties of a confidential agent to her. On the sale of each of the annuity policies, defendant Crowe was paid the usual commission as agent of the life insurance company, codefendant.

On November 5, 1934, the deceased annuitant Mrs. Stoddard, executed 2 separate changes of beneficiary changing the beneficiary in each policy to defendant Crowe.    Plaintiffs claim that at the time of the change of the beneficiary, defendant Crowe was acting in a fiduciary confidential relationship as to the matter of investment in the policies and that the change of beneficiaries was a fraud upon the annuitant and that the plaintiffs have the same right that Mrs. Stoddard had, to have cancelled the change of beneficiaries, restoring the beneficiary in each policy as originally named.

Preceding this change of beneficiaries, and on October 4, 1934, a postcard was written by the deceased annuitant, Mrs. Stoddard, to defendant Crowe, reading,

*Mr. R. C. Crowe.* I've made the decision in my mind and would like to change soon.    If you could come to 77 Warren St. Friday or Saturday I will talk to you.    Thank you.    Yours truly M. STODDARD."

Another communication is dated 10-13-34, addressed to Mr. R. E. Crowe, 36 Kellogg Street, City, and stamped October 13, 1934:

"I forgot to mention when you were here when those papers come back please hold them until I get back.    Will call you.    Expect to be back about Thursday.    Thank you.    Yours very truly.    M. STODDARD.    P. S.    I have a job in Union City."

Witnesses testified that Mrs. Stoddard was at that time employed at the Van Vleet farm northwest of Union City, particularly caring for Mrs. Van Vleet personally.    There is testimony that in pursuance of the communication received from Mrs. Stoddard, defendant Crowe and his wife went to the Van Vleet residence and there produced for Mrs. Stoddard's signature, the papers necessary to make the changes

of beneficiaries as heretofore recited, to defendant Crowe. This was on November 5, 1934, when Mrs. Stoddard (later Fifield) was 45 years of age. Mrs. Crowe was present when the change of beneficiaries was made, and testified that Mrs. Stoddard read over the forms before she signed them and that "she took time to read them clear through."

The 2 policies were sent to the defendant insurance company with the changes of beneficiary forms and the change of beneficiary was indorsed on each policy. The 2 policies were then returned to the annuitant. Mrs. Fifield later wrote defendant Crowe as follows:

"Burlington, Michigan. August 5, '35. *Dear Mr. Crowe.* I'm asking a favor of you, a different kind. Will you please come to get my annuity policies as soon as possible? The reason I'm asking this is the Welfare woman is on my trail. Someone piped to her that I have—now will you please do this at your earliest convenience. Thanks a lot. Very truly, MARIE STODDARD GIFFORD."

In August, 1935, the annuitant delivered the policies back to Mr. Crowe. Evidently she did not want the "welfare woman" to find out about the policies. She also never mentioned the policies to her husband, plaintiff Fifield, whom she later married. In November, 1935, the annuitant, deceased, was back with the Van Vleets and Crowe returned the policies to her. There were several occasions during the 14 years that she lived after the changes of beneficiaries when the deceased annuitant was in contact with Mr. and Mrs. Crowe. The meetings apparently were in response to the deceased annuitant's request for personal favors like transportation to Battle Creek in order that she might transact some business there.

After executing the changes of beneficiaries, the deceased annuitant married a Mr. Gifford, who shortly thereafter died. In 1936, she moved to Hastings and married William Fifield, plaintiff, in 1937.

On November 21, 1942, 6-1/2 years before her death, the deceased annuitant wrote defendant life insurance company as follows:

"214 W. State Rd., Hastings, Mich. Nov. 21, '42. New York Life Ins. Co., New York, New York. *To Whom this may concern:* Will you please write and tell me what has happened to my annuities. One No. 105911 dated March 15, 1934 for $3000.00. And another No. 111452 dated June 21, 1934, for $1,000.00. Both are in Marie Stoddard's name. Mr. R. C. Crowe of 38 Kellogg St., Battle Creek, Mich. had them for safe keeping. He was your representative. I have written him, but got no reply. I would deem it a great favor if you would take this matter up. And write me. Have spinal arthritis. So do not get about very much. Would like to have money to Dr. myself. Awaiting your reply. MARIE (STODDARD) FIFIELD, 214 W. State Rd., Hastings, Mich. P. S. I was Wm. M. Stoddard's widow."

The company referred her to the Detroit branch office. The branch office wrote her that Crowe had been requested to contact her immediately. The Crowes then came to the Fifield home in Hastings and, in the absence of Fifield, had some talk with Mrs. Fifield about the policies.

On February 19, 1949, while Fifield was away from home, Mr. and Mrs. Crowe called at the Fifield residence in Hastings. Defendant Crowe brought with him a previously typed request to defer payment on the policies, which was signed by the deceased annuitant.

Mrs. Fifield died March 25, 1949. Her funeral expenses were paid by Crowe pursuant to his understanding previously made with the undertaker. Mr.

Fifield already knew that such arrangements had been made. There seems to have been no secret of the arrangement that Crowe was to pay Mrs. Fifield's funeral expenses. The 2 annuity policies were, after her death, cashed by Mr. Crowe, who was paid on April 14, 1949, the sum of $4,839.29 on one policy and $1,559.48 on the other.

Plaintiffs claim that the defendant life insurance company was informed by the letter written by the deceased annuitant in November, 1942, of enough circumstances to put them on notice of the fiduciary relationship of their agent, defendant Crowe, with the deceased annuitant.

Plaintiffs now seek in bills filed October 5, 1949, to have declared void for fraud, the changes of beneficiaries made November 5, 1934. Plaintiffs can have no better ground for cancellation of the changes of beneficiaries than deceased annuitant had during her life after the changes were made. The deceased annuitant had the policies in her own possession at times during the period from November 5, 1934 until her death, March 25, 1949. It is not shown that she in anywise manifested any want of knowledge that Crowe was a beneficiary or expressed any dissatisfaction with the form or purport of the changes of beneficiaries. She had had occasion to consult with her own lawyer, a Mr. Kirschman, at times during that period of time, 14 years, and it is not shown that she ever made any question or sought in anywise to cause that the changes of beneficiaries be repudiated or cancelled.

While it cannot be said that courts can view without suspicion a change of beneficiary to an agent of a life insurance company from some other beneficiary, still in this case the record does not show that defendant Crowe assumed a confidential relationship toward Mrs. Stoddard (later Fifield). She came to him because as agent of the defendant life insurance

company, he had adjusted her claim for insurance on her former husband's life. She requested him to explain to her how she could invest her money with his company. She must have considered him as the company's agent in that respect also. The annuity policies constituted a fair bargain for her to accept and all the circumstances indicate that she understood that they were annuity policies. There is no evidence that Crowe undertook to act in a dual capacity, as agent for Mrs. Stoddard (Fifield) and for the insurance company. He simply sold to Mrs. Stoddard (Fifield) the 2 annuity policies at her request. There is no evidence that defendant Crowe took advantage of her in the transaction of issuance of the annuity policies, nor in the changes to himself as beneficiary.

In his opinion, the trial judge speaks of Mrs. Crowe's testimony on terms indicating he accepted it as credible. If her testimony is believed, the good faith of defendant Crowe is established affirmatively.

Undue influence is closely analagous to the fraud charged.

The trial court held:

"The courts have repeatedly held that mere opportunity to exert undue influence is insufficient to justify the conclusion that it existed. *In re Livingston's Estate*, 295 Mich 637; *In re Vreeland's Estate*, 323 Mich 316; *In re Hannan's Estate*, 315 Mich 102."

There is nothing in the record to show that Mrs. Fifield ever wished to rescind the change of beneficiaries. Even after the letter we have hereinbefore quoted, November 21, 1942, she was evidently well satisfied to leave the policies with Mr. Crowe. If she had sought in the ensuing years to again change the beneficiaries, she could have done so even against the efforts of defendant Crowe if he had resisted. The fact that the beneficiaries were not again

changed, is at least some indication that she was satisfied to let Mr. Crowe remain the beneficiary.

The changes of beneficiaries were made November 5, 1934. The bills of complaint herein were filed October 5, 1949. During the nearly 15 years that had elapsed, Mrs. Van Vleet, witness to the changes, died. We cannot say that defendant Crowe was not prejudiced by the long delay of nearly 15 years in filing the bill. The long delay cost defendant Crowe the loss of right of examination of Mrs. Fifield herself and of Mrs. Van Vleet. We do not say there was not laches, but prefer to dismiss the bills for failure to prove the fraud claimed. There is no need to cite authorities that where the fraud relied on is not proven, the bill should be dismissed.

There remains no ground to hold defendant insurance company to any accounting with plaintiffs. The decrees appealed from, dismissing the bills of complaint, are affirmed. Costs to defendants in both suits.

ADAMS, C. J., and DETHMERS, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred with REID, J.

BUTZEL, J., concurred in the result.