343 Mich. 445 (1955)
72 N.W.2d 181
In re WILLIAMS ESTATE.
ZIARKO
v.
HAMILTON.
Docket No. 1, Calendar No. 46,195.
Supreme Court of Michigan.
Decided October 3, 1955.
*446 Edward N. Barnard, for proponents.
Wallace A. Temple, for contestant.
SHARPE, J.
This is an appeal by Lola Hamilton, a niece of Mollie Williams, from an order of the circuit court of Wayne county allowing the will of Mollie Williams and remitting the same to the probate court of Wayne county for further proceedings.
The record shows that Mollie Williams was born January 2, 1875, and was the widow of Frank Williams who died June 9, 1947; that Mollie Williams lived alone in her home in Detroit after the death of her husband; that on August 4, 1950, she executed a will in which she left practically all of her real and personal estate to defendants, Albert A. Ziarko, Jr., and Mae G. Ziarko; that prior to the execution of said will Mollie Williams made a transfer of a bank account in the amount of $5,000 to herself and both defendants with right of survivorship; that on June 10, 1949, similar action was taken with another bank account in the amount of $6,400, and on the same day she executed a transfer of 1,000 shares of Detroit Edison stock in a similar manner; that in June or July, 1949, she purchased a new automobile and gave the same to Albert A. Ziarko, Jr.
The will was offered for probate. Lola Hamilton offered objections to the probate of the will. Upon the filing of the objections to the probate of the will, the probate court certified the proceedings to the circuit court of Wayne county.
*447 In the objections filed in the probate court to the probate of the will, we find the following:
"In December, 1948, Albert A. Ziarko, Jr., was an allegedly single man of 26 years, and was employed as a freight car checker with the New York Central Railroad. He apparently lived in poor financial circumstances with his mother, Mae G. Ziarko. He was, as contestant is informed and believes, a defrocked Baptist minister, obsessed with a consuming ambition to better his lot by unjust enrichment through preying on wealthy old ladies. In December, 1948, while searching for likely victims, he came upon Mollie S. Williams, a person having the desired attributes, including wealth. * * *
"That Mollie S. Williams, being of the age of 74, had for a great number of years considered her physical charms and beauties to be considerably diminished, but Albert A. Ziarko, Jr., who was 26 years of age at the time, gave her the most outrageous, flagrant and passionate compliments as to the beauty of her face and figure. He became sexually intimate with the 76-year-old woman. He administered to her certain treatments or experiences which were peculiarly tendered by him nightly with mechanical devices and apparatuses upon the nude body of the 76-year-old Mollie S. Williams; that he then practiced certain manipulations upon her body and limbs. This was a technique he had perfected and practiced upon other old ladies. * * *
"That at all times herein, Mae G. Ziarko was aware of the unlawful, lecherous, lewd and lascivious conduct of her son in relation to Mollie S. Williams, and she aided and abetted and in every way encouraged such conduct for the deliberate purpose of obtaining unjust enrichment to herself and her son, Albert A. Ziarko, Jr. That Mae G. Ziarko well knew, or should have known, that the unlawful conduct of her son was practiced upon Mollie S. Williams solely for unjust enrichment, and was not out of companionship or affection to said Mollie S. Williams, and was designed to, and did, cause Mollie *448 S. Williams to give deeds and testaments assigning all her property to mother and son as aforesaid. * * *
"That the association of said Albert A. Ziarko, Jr., with Mollie S. Williams was fraudulent at the inception, and early in 1949 this lecher commenced the practice of taking sums of money from Mollie S. Williams for his own personal use, which practice continued to the date of her death. That shortly after Albert A. Ziarko, Jr., began his perfidious siege upon the person and pocketbook of Mollie S. Williams, he bent her completely to his will, and he kept her under his spell and domination up to the time of her death.
"That said Albert A. Ziarko, Jr., and Mae G. Ziarko performed all of the aforementioned acts upon Mollie S. Williams with a deliberate and unlawful intent, in furtherance of a scheme to subvert and bend the mind of Mollie S. Williams to their will and their domination  that said domination over the mind of Mollie S. Williams was desired and secured so as to enable them to have her commit acts she would not have committed otherwise; to-wit: assign over to them her property and name them as principal beneficiaries in her will, all without any lawful consideration passing from them to Mollie S. Williams; or without the intent, sound mind and disposing memory of Mollie S. Williams being exercised. * * *
"That the said Mollie S. Williams, if indeed she ever executed said instrument, was prevailed upon to execute the same by means of undue and improper constraint or influence exercised upon her by the beneficiaries in said will, Albert A. Ziarko, Jr., and his mother, Mae G. Ziarko, at and before the making and execution of the same, or exercised upon her by the agents, counsel and attorneys for the said beneficiaries.
"That the said alleged will, if executed by said Mollie S. Williams, was executed without comprehension of the consequences of said instrument, *449 wherefore, the same was and is not the valid and enforceable will of said Mollie S. Williams.
"That the said Mollie S. Williams, at the time and occasion of the alleged execution of said purported last will and testament was not possessed of understanding and capacity sufficient to enable her to execute a valid last will and testament.
"That Mollie S. Williams, at the time of her death, was 76 years of age and due to said advanced age was physically and mentally feeble and senile and was much more susceptible to the undue influence, which is claimed by contestant to have been exercised upon her by Albert A. Ziarko, Jr., and Mae G. Ziarko, his mother.
"That the said Albert A. Ziarko, Jr., and Mae G. Ziarko did exercise fraud, duress and undue influence upon Mollie S. Williams up to and at the time of her signing of the said alleged will."
The cause came on for hearing in the circuit court without a jury. At the close of all testimony, the trial court rendered an opinion and entered an order allowing the will to probate. We quote, in part, the opinion of the circuit judge:
"The issues are: (1) Was Mollie Williams mentally incompetent at the time of the execution of said will?
"I think it will be practically admitted that there is no testimony in this case which would warrant the court in finding Mollie Williams mentally incompetent at the time the will was executed.
"The only other question in the case is: Was the will that was executed by Mollie Williams, leaving everything to Albert A. Ziarko, Jr., and his mother, secured through the undue influence of Albert A. Ziarko, Jr., his mother, Mae G. Ziarko, or anyone else in their behalf? * * *
"An important factor that enters into this question as to whether or not there is sufficient testimony in this case to warrant a finding by the court *450 that undue influence was used and exercised by Albert A. Ziarko and his mother to get Mrs. Williams to leave them this property, is the length of time that Mr. Barnard and his assistants were drafting the will and fixing it up so that this property could lawfully and legally, without any fraud or undue influence, descend from Mrs. Williams to the Ziarkos. If it had been crooked or dishonest, not true, or a fraud, it would have been discovered long before Mrs. Williams' death."
We have examined the record carefully and are in complete accord with the trial court in finding that Mollie Williams was mentally competent to execute a will at the time the will was executed. The record supports a finding of fact that Mollie S. Williams was mentally and physically alert at the time of the execution of the will.
Whether the execution of the will was secured through the undue influence of Albert A. Ziarko, Jr., and his mother presents a question of fact.
It is the claim of contestant that Albert A. Ziarko, Jr., exercised such influence over Mollie S. Williams that her will does not speak her real wishes. In this connection it should be noted that Albert A. Ziarko, Jr., was born in 1922. He quit high school at the close of finishing the 10th grade. He was arrested for stealing 2 fox furs, but the prosecution was dropped before trial. He was married and divorced. He aspired to the ministry and was ordained in 1944 at the Congregational Baptist Church in Detroit. He remained there for 2 to 2-1/2 years as associate pastor. In 1947 he served a similar capacity in the Linden Park Baptist Church in Detroit. He was convicted on a charge of accosting and soliciting a policeman for an immoral sexual act and served some time in Ionia State Hospital. In 1948 he was employed as a night traffic clerk at the New York Central Railroad. He met Mollie S. *451 Williams on Christmas day in 1948 when he was 26 years of age and she was 73 years of age. In June of 1949 he moved in to live in the home of Mollie S. Williams and lived there for more than 1 year.
It is the claim of contestant that during the last 2 years Mollie S. Williams was forgetful, was a little senile, fell asleep during conversations; was depressed, had heart trouble, cried a great deal, frequently dressed like a 16-year-old girl, and began to wear a flaming pink negligee. Contestant offered evidence in support of the above claim.
Aaron Priebe, a witness for proponents and an attorney in the office of Edward Barnard, testified:
"I am a lawyer, admitted to practice in Michigan in 1930. In 1949 and 1950 I was in your office. My signature is on the will of Mollie S. Williams which you hold in your hand. It is dated August 4, 1950. Agnes Secor and Theresa C. Flower, an attorney, also witnessed the will. These 2 witnesses and myself and Mollie S. Williams all signed the will in the presence of each other. Mrs. Williams stated in the presence of all of us that it was her last will and testament. You put the question to her. I observed Mrs. Williams carefully. Physically, she was about as sound and able as a woman her age would be, in fact she looked like a small, rugged type. Apparently her age had no effect on her soundness of mind. Before signing she was asked if she wanted to read the will first. She said, `Of course, I always read everything I sign.' You handed her the will. She read it before signing. She stated that she regretted that in the will she was leaving even a dollar to Lola Hamilton. Mr. Crossley was also present and these 3 witnesses and yourself when the will was signed."
Similar evidence by other witnesses was introduced. It is apparent that there is an issue of fact regarding undue influence. The rule relative to reversing a judge who heard the cause without the *452 aid of a jury is to be found in Leonard v. Hey, 269 Mich 491, 495 (37 NCCA 111):
"We do not substitute our judgment on questions of fact unless they clearly preponderate in the opposite direction."
In the case at bar Albert A. Ziarko, Jr., lived at the home of Mollie S. Williams for approximately a year or more and had an opportunity to influence her thinking, but opportunity to influence is not sufficient to deny a will to probate, see In re Alvord's Estate, 258 Mich 497, and In re Vreeland's Estate, 323 Mich 316. Nor can it be said that suspicion of Albert A. Ziarko, Jr., and his mother is of sufficient force to vitiate a will, see In re Williams' Estate, 185 Mich 97.
The record shows that Mollie S. Williams knew what property she possessed at the time she executed the will and also knew the natural object of her bounty. The record also shows that she consulted with attorney Edward N. Barnard and his assistants over a period of 15 months prior to the execution of the will. It is our opinion that if there was an issue of fact as to undue influence, contestant has failed to sustain the burden of proof of showing the same.
The judgment is affirmed, with costs.
CARR, C.J., and BUTZEL, SMITH, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.